UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RICKY J. SCHLATTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-CV-104 JD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Ricky J. Schlatter twice applied for but was denied social security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) by the Social Security Administration.[1] Only his second round of applications are being appealed and the matter has been fully briefed [DE 19, 28, 37]. For the following reasons, the Court REMANDS this matter to the Commissioner for further proceedings.

### I. FACTUAL BACKGROUND

Mr. Schlatter filed his initial applications for benefits on November 9, 2009, alleging an onset date of December 18, 2007 for limitations and pain caused by two cervical fusion surgeries that took place in 2001 and in 2006. His application was denied initially and upon reconsideration. Mr. Schlatter then filed new applications for benefits on February 29, 2012 alleging the same impairments. His application was, once again, denied initially and upon reconsideration. An administrative hearing with Administrative Law Judge Terry Miller (ALJ)

---
[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 401.1501 *et seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et seq*. Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

was held on May 23, 2013, at which Mr. Schlatter was represented by counsel. At the hearing, the ALJ heard testimony from Mr. Schlatter, the claimant's sister Rebecca McCoy, and vocational expert Robert S. Barkhaus, Ph.D. (VE).

In the written opinion that followed, the ALJ found that Mr. Schlatter suffered from the following severe impairments: chronic neck and lower back pain with generalized arthralgias, status post cervical fusion surgeries in 2001 and 2006, history of carpal tunnel syndrome and club fingers, and intermittent tinnitus. The ALJ believed that Mr. Schlatter's impairments were severe but did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The ALJ found that Mr. Schlatter had the residual functional capacity (RFC)[2] to preform "light" work, as defined in 20 C.F.R. § 404.1567(b) (i.e., lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; sitting up to at least 6 hours in an 8 hour workday; and, standing/walking, in combination, up to at least 6 hours in an 8 hour workday), along with the following limitations:

> he needs a sit/stand option (which allows for alternating between sitting and standing up to every 30 minutes, if needed, but the positional change would not render the individual off task); only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; needs to avoid overhead reaching; all other reaching can be done frequently; only frequent fingering; needs to avoid concentrated exposure to loud noise and hazards (i.e. operational control of dangerous moving machinery, unprotected heights, and slippery/uneven/moving surfaces). Because of limitations of range of motion of his neck, activities that require range of motion or repetitive neck movement should not be required (the claimant showed on range of motion of the neck (as compared to normal); flexion of 20 degrees (normal is 50 degrees); extension of 15 degrees (normal is 60 degrees); lateral flexion of 20 degrees on the right and 25 degrees on the left (normal is 45 degrees); rotation of 40 degrees on the right and 40 degrees on the left (normal is 80 degrees)).

---

[2] Residual Functioning Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

With this RFC in mind, the ALJ presented hypothetical questions to the VE. Consistent with the VE's testimony, the ALJ concluded that Mr. Schlatter was unable to perform any past relevant work as a drywall installer/finisher. However, the ALJ concluded that Mr. Schlatter could perform the jobs identified by the VE (which were based on the RFC listed above), including work as an electrical accessories assembler, small products assembler, and laundry folder. As a result, the ALJ determined that Mr. Schlatter was not disabled. The Appeals Council denied review of the ALJ's decision, making the decision the final determination of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

## II. STANDARD OF REVIEW

In reviewing the decision, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both

the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Rather, an ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Id*. Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### III. ANALYSIS

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

        5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

        At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

        In contesting the Commissioner's denial of benefits, Mr. Schlatter argues that the Commissioner erred in four respects: (1) the ALJ did not sufficiently discuss whether Mr. Schlatter met Listing 1.04(A)[3]; (2) the ALJ gave insufficient reasons for not giving his treating physician, Dr. David Pepple, controlling weight; (3) the ALJ gave insufficient reasons for discrediting Mr. Schlatter's testimony; and (4) ultimately these errors affected the RFC determination, and that as a result, the Commissioner failed to carry the burden at step five establishing that Mr. Schlatter was capable of performing jobs that existed in sufficient numbers.

---

[3] In Mr. Schlatter's opening brief, counsel inadvertently argued that Mr. Schlatter met Listing 1.04(B), as opposed to Listing 1.04(A), both of which concern disorders of the spine. However, the Commissioner's brief indicates it was on notice of the possible error [DE 28 at 8, n. 2], and even addressed the argument. Therefore, this is not an appropriate circumstance for waiver to apply.

## A.  Meeting or Equaling Listing 1.04(A)

A claimant is eligible for benefits if he has an impairment, or combination of impairments, which meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Listing describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing. 20 C.F.R. § 404.1525(a).  The plaintiff has the burden to show that his impairments meet a Listing, and he must show that his impairments satisfy all of the criteria detailed in the Listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Mr. Schlatter contends that he meets Listing 1.04(A) as it applies to disorders of the spine.  Listing 1.04(A) states as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)…

20 C.F.R. pt. 404, Subpt. P, app. 1, § 1.04.  In support of his meeting this Listing, Mr. Schlatter points to medical records from Mr. Schlatter's treating physician, Dr. Pepple, wherein Dr. Pepple opined in December 5, 2012 and May 16, 2013 that "on examination or testing" Mr. Schlatter suffered from neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (muscle weakness or atrophy with associated muscle weakness), accompanied by sensory or reflex loss and, severe burning or painful dysesthesia and a need to change position more than once every two hours (Tr. 183, 196).

Despite this evidence, the ALJ's three-sentence discussion relative to whether Mr. Schlatter met any Listing said only the following:

> There is no medical evidence of record and no medical opinion of record to support a finding that the claimant meets or medically equals the requirements of any of the listings in the Regulations, including those in 1.00. These will be discussed in more detail later in the decision. The claimant does not have an impairment the [sic] meets the criteria of listing 1.02 (major dysfunction of a joint(s) (due to any cause) because the evidence fails to establish that the claimant is unable to ambulate effectively or unable to perform fine and gross movements effectively.

(Tr. 16). The ALJ never included a subsequent discussion of whether Mr. Schlatter met any Listing, and the ALJ never indicated whether he specifically considered Listing 1.04(A). Moreover, while the ALJ did discuss Dr. Pepple's medical records (Tr. 18), he never specifically referred to those portions of the medical records which revealed that upon examination or testing, Dr. Pepple found that Mr. Schlatter presented with several of the findings which were associated with his cervical spine.

While the Commissioner posits that Mr. Schlatter cannot meet Listing 1.04(A) without evidence of nerve root impingement, such a position ignores the fact that Mr. Schlatter has produced "evidence of nerve root compression" as "characterized by" the various symptoms documented by Dr. Pepple which coincide with those symptoms identified in the Listing. Not only did the ALJ not mention or identify the applicable Listing concerning Mr. Schlatter's spine impairment, but the ALJ did not evaluate the evidence on Listing 1.04(A)'s criteria which was favorable to Mr. Schlatter, such as Dr. Pepple's documentation and Mr. Schlatter's history of two unsuccessful cervical spine fusion surgeries at C4-6 and ongoing upper extremity and neck problems. *Ribaudo*, 458 F.3d at 584 (ordering a remand and noting that the ALJ did not evaluate any of the evidence on Listing 1.04A's required criteria which was favorable to the claimant).

7

In addition, the Commissioner's position fails to acknowledge that the ALJ's three sentence analysis on whether Mr. Schlatter met any Listing did not adequately explain the reasoning behind the ALJ's decision. While it is true that Mr. Schlatter has the burden of showing that his impairments meet a Listing, *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), the Seventh Circuit has also held that an ALJ should mention the specific Listings he is considering and his failure to do so, if combined with a "perfunctory analysis," may require a remand. *Ribaudo*, 458 F.3d at 583 (an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a "perfunctory analysis," may require a remand) (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). In this case, the ALJ did not discuss Listing 1.04 or the required criteria of Listing 1.04(A) and he performed only a perfunctory analysis—or no analysis at all—of whether Mr. Schlatter's met the requisite limitations. As a result, the ALJ failed to minimally articulate his justification for rejecting or accepting specific evidence of a disability, thereby requiring remand. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) ("An ALJ must only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'") (citation omitted).

And as for the ALJ's reliance on the state agents' opinions who opined that Mr. Schlatter did not medically meet or equal any Listing, the ALJ never indicated relying on the state agents' opinions with respect to their Listing findings. And even if he had, the state agents' opinions were issued prior to the creation of Dr. Pepple's documentation which supports Mr. Schlatter's Listing argument—and thus, their medical opinions are substantively incomplete. *See* SSR 96-6p (requiring an ALJ to obtain an updated medical expert opinion prior to making a decision of medical equivalence "[w]hen additional medical evidence is received that in the opinion of the

administrate law judge or the Appeals Counsel *may* change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.") (emphasis added). Ultimately, the ALJ's inadequate discussion of Step Three requires remand.

**B.      Weight Afforded the Treating Physician**

The ALJ must give controlling weight to a treating physician's opinion if it is well supported by medically acceptable diagnostic techniques and it is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415. When the treating physician's opinion is not entitled to controlling weight, however—such as where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995))—then the ALJ should move on to assessing the value of the opinion in the same way he would any other medical evidence. *See* 20 C.F.R. § 404.1527(c)(2).

Assessing what weight to afford the opinion depends on a number of factors, such as the examining relationship (with more weight given to an opinion of an examining source); the treatment relationship, which includes the length, frequency, and nature of the treatment; the degree to which the source presents relevant evidence to support the opinion; the consistency of the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415. If the ALJ discounts the treating physician's opinion after considering these factors, his decision must stand as long as he "minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder*, 529 F.3d at 415 (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Here, the ALJ committed reversible error by mischaracterizing Dr. Pepple's reports and undercutting the ALJ's own reasoning in discrediting Dr. Pepple based on some of the factors listed in § 404.1527(c).  With respect to the ALJ's mischaracterization of Dr. Pepple's reports, the ALJ afforded no weight to Dr. Pepple's December 5, 2012 and May 16, 2013 opinions that Mr. Schlatter could not stand/sit for thirty and sixty minutes, respectively, because (according to the ALJ) if Mr. Schlatter were so extremely limited, then he "would be essentially bedridden or confined to a wheelchair." (Tr. 18).  But Dr. Pepple's opinions did not state that Mr. Schlatter could only stand/sit for thirty or sixty minutes *out of the entire day or even workday*, rather, the forms indicated he could only stand/sit for these time periods "at one time." (Tr. 183, 197).  And thus, the actual limitation imposed by Dr. Pepple is not indicative of Mr. Schlatter's having to be essentially bedridden or wheelchair bound, as the ALJ erroneously reasoned for purposes of discrediting Dr. Pepple.

As for the factors discussed by the ALJ under § 404.1527(c), the ALJ believed that Dr. Pepple's description of Mr. Schlatter's pain as "severe" or "extreme" was inconsistent with Mr. Schlatter's taking only over-the-counter medications for pain rather than prescription drugs (Tr. 18).  In addition, the ALJ discredited Dr. Pepple's opinions because his treatment records were fairly minimal with few objective findings (Tr. 18).  While these would normally be legitimate reasons for discounting a treating doctor, in this case, these particular conclusions were inconsistent with other observations made by the ALJ.

In particular, the ALJ had also noted that the reason Mr. Schlatter did not take pain medication beyond Advil or Aleve is because the prescription pain medications made him foggy and he had previously become addicted to them (Tr. 17, 19).  The ALJ had also observed that the reason for Mr. Schlatter's limited documented medical treatment actually resulted from his

10

having no insurance and having to borrow money from his son to see Dr. Pepple (Tr. 17, 19).
Thus, these observations by the ALJ undercut the ALJ's own reasoning for discrediting Dr.
Pepple. *See, e.g., Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000) (noting that the fact claimant
had not been prescribed heavier painkillers than extra-strength Tylenol and Motrin (ibuprofen)
cannot be thought compelling evidence of lack of severity of pain, since heavy painkillers often
have serious side effects, or are addictive, or both); *see also Shauger v. Astrue*, 675 F.3d 690,
696 (7th Cir. 2012) ("an ALJ must first explore the claimant's reasons for the lack of medical
care before drawing a negative inference.") (citations omitted); SSR 96–7p ("the adjudicator
must not draw any inferences about an individual's symptoms and their functional effects from a
failure to seek or pursue regular medical treatment without first considering any explanations
that the individual may provide, or other information in the case record, that may explain
infrequent or irregular medical visits or failure to seek medical treatment.").

Ultimately, without sufficient explanation by the ALJ to discredit Dr. Pepple[4]—who
provided the primary medical evidence supporting Mr. Schlatter's case—the case must be
remanded.

**C.     The Credibility Determination**

Mr. Schlatter argues that the ALJ erred in discrediting his testimony that, if believed,
would have resulted in greater limitations in the RFC finding. In making a disability

---

[4] The Commissioner's brief provides additional reasons for discounting Dr. Pepple [DE 28 at 15-16]; however, these reasons were not cited by the ALJ as a basis for discrediting Dr. Pepple's medical records and opinions. As such, the Commissioner's arguments are improper *post hoc* rationalizations which cannot be considered by the Court. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)). Instead, "principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision"; and the Court, therefore, confines its "review to the reasons supplied by the ALJ." *Id.* And given the many errors identified herein, this is not a situation where the doctrine of harmless error applies. *See, e.g., Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (the court may affirm the decision "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support.").

11

determination, the ALJ must consider a claimant's statements about his symptoms and how his symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). While subjective allegations of disabling symptoms alone cannot support a finding of disability, *id.*, the ALJ must consider the claimant's subjective complaints, the relevant objective medical evidence, and other factors relevant to a claimant's symptoms including:

> (1) The individual's daily activities;
> (2) Location, duration, frequency, and intensity of pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) Type, dosage, effectiveness, and side effects of any medication;
> (5) Treatment, other than medication, for relief of pain or other symptoms;
> (6) Other measures taken to relieve pain or other symptoms;
> (7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

An ALJ is not required to give full credit to every claim made by the claimant or to find a disability each time a claimant states he is unable to work. *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, SSR 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p. Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . [the] court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)). However, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Here, the ALJ determined that Mr. Schlatter was "not entirely credible" with respect to his statements concerning his symptoms, but said so without then identifying the symptoms he found to be incredible (Tr. 17). However, it is clear that the ALJ discredited Mr. Schlatter's

12

testimony in part because he was not taking prescription medications for his "alleged severe pain." (Tr. 19). But (as with the ALJ's discrediting of Dr. Pepple), it was error to judge Mr. Schlatter's credibility on this basis given Mr. Schlatter's explanation (and the ALJ's acknowledgment) that Mr. Schlatter didn't take pain medications on account of their adverse side effects. *See Green*, 204 F.3d at 782.

While the ALJ did discuss the medical findings by several state agents which did not necessarily support a finding of disability, he did not discuss many of the other factors under 20 C.F.R. § 404.1529(c)(3), which are relevant to weighing Mr. Schlatter's credibility with respect to his complaints about the intensity, persistence, and limiting effects of his symptoms—especially pain (by way of example). For instance, in assessing Mr. Schlatter's credibility, the ALJ included no discussion of the fact that Mr. Schlatter's pain never fell below a 7 on a 10 point pain scale and was aggravated by any amount of lifting. Nor did the ALJ discuss the fact that Mr. Schlatter's pain had rendered him unable to perform many daily activities (including cooking, dusting, vacuuming, folding laundry, and climbing stairs), unable to reach forward with his arms, and unable to keep pace. The ALJ did not include any reference to these alleged limitations despite there being record support for them. For instance, Mr. Schlatter's testimony established how his pain has affected his life by limiting his ability to perform household and daily tasks (Tr. 261-269, 271), requiring him to take several naps a day (Tr. 269), causing him to get fired from his job because it was fast-paced work and "[he] couldn't keep up" (Tr. 270), and eliminating his ability to put his arms in front of him or push/pull (Tr. 266). In addition, Dr. Pepple (whose opinions were rejected without sufficient explanation) had indicated that Mr. Schlatter's pain was severe/constant and he could not operate a push/pull appliance (Tr. 194-199). Finally, even state agent Michael Scherbinski, Ph.D. opined that the degree to which Mr.

13

Schlatter could engage in physical activities appeared impacted by chronic pain (Tr. 153)[5].
Thus, in discrediting Mr. Schlatter, the ALJ had a duty to sufficiently explain why these facts did not give credence to Mr. Schlatter's being further limited by his severe and chronic pain.

While it is true there is an inherent difficulty with evaluating testimony about pain, *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006), on remand a more extensive credibility analysis is necessary to properly assess whether the ALJ is justified in finding Mr. Schlatter's testimony about pain exaggerated. In addition, the ALJ is instructed to explain which statements of Mr. Schlatter's were discredited and the basis for discrediting the alleged limiting effects of his symptoms. And as discussed below, the ALJ shall then explain how Mr. Schlatter's actual abilities and limitations were accounted for in the RFC assessment.

**D.     Mr. Schlatter's RFC**

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as "other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted)*; see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how his symptoms affect his daily life and ability to work). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id*. An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Nevertheless, an ALJ need not

---

[5] While the ALJ did refer to this state agent's findings (Tr. 15), he did so only with respect to considering whether Mr. Schlatter had a severe mental impairment.

provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Here, the ALJ's insufficiently supported discussion of the weight afforded Dr. Pepple's opinions and Mr. Schlatter's testimony affected the ALJ's RFC findings about the extent of Mr. Schlatter's limitations. Until the ALJ supplies sufficient reason to discount Mr. Schlatter and his treating physician's opinions, the Court is unable to conclude that the RFC is supported by substantial evidence. *See Schmidt v. Astrue*, 496 F.3d 833, 843-46 (7th Cir. 2007) (noting the ALJ must consider the entire record, consider the claimant's testimony, weigh the physicians' opinions, and support his RFC finding by substantial evidence). As a result, on remand the ALJ must reconsider the weight afforded this evidence and whether it would support further limitations, especially with respect to the limitations caused by his chronic neck and back pain. And the ALJ should explain how Mr. Schlatter's limitations were accounted for in the RFC assessment.[6]

### E.     Mr. Schlatter's Ability to Perform Work

The ALJ found that Mr. Schlatter could not perform his past work because he was limited to light exertional work (step four), but he was able to perform other jobs that existed in significant numbers in the national economy (step five). In deciding what work Mr. Schlatter

---

[6] The Commissioner refers to several statements made by the ALJ to suggest that the ALJ was generous in his RFC determination. Specifically, the Commissioner notes that the ALJ indicated he had modified the state agent opinions "to accommodate many of the claimant's complaints" (Tr. 18), gave "significant deference" to the claimant in finding a severe impairment and acknowledging his financial constraints for the receipt of medical care (Tr. 19), and had "fully and generously accommodate[d] the claimant's impairments" (Tr. 19). Yet, these broad statements fail to indicate which limitations he credited and how they were accounted for in the RFC to permit adequate review.

was capable of performing, the ALJ relied on the VE's testimony, which in turn relied on the ALJ's hypothetical question—which was ultimately premised on the ALJ's RFC determination.

The ALJ is required to incorporate into his hypotheticals those impairments and limitations that he accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings about the extent of Mr. Schlatter's limitations led the ALJ to ask hypotheticals of the VE based upon only some, as opposed to all, of Mr. Schlatter's complaints. Once the ALJ provides adequate support for his RFC findings, which can then be used as the basis for the hypotheticals, the Court can assess whether a VE's testimony can be relied upon as an accurate indicator for the type of work Mr. Schlatter is capable of performing.[7] But because it is the ALJ's duty to assess the weight to be afforded to the record evidence and to determine the claimant's actual limitations and resulting RFC, 20 C.F.R. §§ 404.1520(e), 404.1545, 404.1546(c), steps four and five cannot be properly analyzed in this appeal. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. The remedy for these shortcomings is further consideration, not an award of benefits.

---

[7] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Mr. Schlatter's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, rather than on the record itself or the limitations of the claimant himself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Mr. Schlatter's request to remand the ALJ's decision [DE 1].  Accordingly, the Court now REMANDS this case to the Commissioner for further proceedings consistent with this Opinion and Order.

SO ORDERED.

ENTERED:  August 12, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court